MRS. PAULINE B. SLOAN, ADMINISTRATRIX OF THE ESTATE OF LAWRENCE SLOAN, v. JOE H. GLENN, JR., JAMES K. GLENN, MRS. CORINNA J. BENNETT, LOUISE G. GLENN, VERA E. BENNETT, PARTNERS, DOING BUSINESS UNDER THE PARTNERSHIP NAME OF QUALITY OIL TRANSPORT, AND CLAUDE DEAN LEWIS.

(Filed 21 November, 1956.)

**1. Automobiles § 41d—**

Evidence of defendant driver's negligence in attempting to pass a vehicle traveling in the same direction in an area of special hazard from a ditch-digging operation on the side of the highway, which area was protected by warning signs of "One-Way Road," "Slow," "Men Working," *held* sufficient to sustain the court's denial of defendants' motion for judgment of nonsuit and to the court's refusal to give peremptory instructions in an action to recover for the death of the driver of the preceding vehicle resulting when defendant driver collided therewith.

**2. Same: Automobiles § 14—Attempt to pass vehicle traveling in same direction in area of special hazard held not negligence per se under circumstances.**

The evidence disclosed that the accident in suit occurred at an area on the highway along which a ditchdigging machine, proceeding east, was in operation on the south side, piling dirt some 12 to 18 inches on the 22 foot wide hard surface, that the area was protected by warning signs of "One-Way Road," "Slow," "Men Working," that there was room in the area for traffic to meet and pass and that it had been doing so except immediately near the machines, and that no one was directing traffic at the area. The evidence further tended to show that defendant driver, in a tractor-trailer, was following a backfiller tractor used in the work, both traveling west, that east of the ditchdigging machine, as defendant driver attempted to pass, the operator of the backfiller turned left, and that both vehicles proceeded diagonally across the south lane and the tractor-trailer struck the backfiller at or near the edge of the south pavement, knocking the driver of the backfiller therefrom to his death. Defendant's evidence was to the effect that he blew his horn to pass, and that the operator of the backfiller turned to his right, and then sharply to the left into defendant's path of travel. *Held:* The warning signs were sufficient to put motorists on notice that they were approaching an area of special hazard, making the question of negligence of defendant driver in attempting to pass one for the jury, G.S. 20-150, but not being sufficient under the circumstances to justify instructions to the effect that the act of defendant driver in attempting to pass was negligence in itself.

JOHNSON, J., not sitting.

APPEAL by defendants from *Phillips, J.*, 23 April, 1956, Term, of FORSYTH.

Action to recover damages for the alleged wrongful death of Lawrence Sloan.

Plaintiff alleges that Sloan's death was caused by the negligence of defendant Lewis. Lewis' codefendants, partners trading as Quality

Oil Transport, admit responsibility for Lewis' negligence, if any, under the doctrine of *respondeat superior*.

The court submitted issues as to negligence, contributory negligence and damages. The jury, answering all issues in favor of plaintiff, awarded damages in the amount of $25,000.00.

There was evidence tending to show the facts narrated below.

Highway #421 (Greensboro-Winston-Salem), at the point of collision, runs east-west. The paved portion was 22 feet wide. A line marked the center. On each side of the pavement there is a dirt shoulder 5 feet or more in width.

G. C. Crouch Construction Company, under contract with the State Highway and Public Works Commission, was engaged in laying a pipe line from the Kernersville water system to Pilgrim College, some 2,000 feet. This work started in Kernersville and was proceeding east along the south shoulder of Highway #421. Under subcontract, the M & W Motor Company, referred to as McLean, dug the ditch; and, after Crouch's men had laid and connected the pipe, "backfilled" the ditch. Murdock, the foreman, and Sloan were McLean's only employees on the job.

Murdock operated a Jeep and attached ditchdigger. The boom, "with claw-like bits that rotate," brought the dirt up under the Jeep; and an auger pushed the dirt from under the Jeep to the north side thereof. The ditch, 24-30 inches deep, was about 2½ feet south of the paved portion of Highway #421. As a result of this operation, a pile of dirt 12-24 inches high was thrown some 12 to 18 inches onto the south side of the pavement. The ditchdigging machine had dual wheels. The inside (left) wheel cleared the pavement. The outer (left) wheel ran on the pavement.

Sloan operated what was referred to as a backfiller tractor. This was an ordinary small farm tractor with a blade attached to and across the front to push the dirt back into the ditch. This blade was wider than the front wheels, extending out approximately 2 feet on each side.

Prior to 25 September, 1952, the ditch had been dug and the pipe laid for a distance of approximately 1,500 feet east from the Kernersville city limits. The ditch, all but 125 feet, had been backfilled. On 25 September, 1952, prior to and at the time of the collision, Murdock was operating the ditchdigger.

Fox, Crouch's superintendent, obtained signs from the State Highway and Public Works Commission. These signs were yellow with black lettering, approximately 5 feet wide and 3 feet high. Fox placed three signs, "ONE-WAY ROAD"—"SLOW"—"MEN WORKING," on each side of the area of the ditchdigging, etc., operations. Those facing eastbound traffic (south lane) were set up on the pavement. Those facing westbound traffic (north lane) were set up just north of the pavement. The

"ONE-WAY ROAD" sign facing traffic proceeding westwardly was approximately 400 feet east of the point of collision. The "ONE-WAY ROAD" sign facing traffic proceeding castwardly was approximately 500 feet west of the point of collision.

Sloan, operating the backfiller tractor, and Lewis, operating a tractor-tanker (trailer) combination about 40-45 feet long and loaded with 5,175 gallons of kerosene oil, were proceeding westwardly in the right (north) lane of Highway #421, Sloan in front of Lewis. Both were east of the ditchdigging equipment, hence east of where the dirt was piled along the pavement. Sloan looked back at the tractor-tanker, and thereafter pulled to his left onto the south lane of the highway. Lewis, who had pulled to his left for the purpose of passing Sloan, cut farther to his left. Both vehicles proceeded diagonally across the south lane, the tractor-tanker striking the backfiller truck at or near the south edge of the pavement and knocking it against the front of the Jeep-ditch-digger. The impact knocked Sloan off the seat of the backfiller tractor. He fell under the tractor-tanker and was crushed by the right rear wheels thereof, dying instantly.

The foregoing will suffice to point up the basis of decision.

In charging the jury, the court gave these instructions:

". . . and the Court further charges you that a motorist traveling west had no right to pass a vehicle going in the same direction at the place of this accident, because it was a one-way travel road, and the signs so designated it, and if the defendants' driver attempted to pass the vehicle being driven by the plaintiff's intestate at the place he testified he did intend to pass it and attempted to pass, that would be negligence on his part, and if such negligence on his part was the proximate cause of the injury and death of plaintiff's intestate, the plaintiff would be entitled to have you answer the first issue, 'Yes.'"

Again: ". . . and the Court charges you, as a matter of law, that the defendants' driver did not have a right to pass any vehicle from the rear in this restricted area, but it was his duty to stay in the righthand lane at all times until he got out of the restricted area."

Exceptions No. 39 and No. 43 are to these portions of the charge.

Judgment for plaintiff, in accordance with the verdict, was signed and entered. Defendants excepted and appealed, assigning errors.

*C. H. Dearman and Womble, Carlyle, Sandridge & Rice for plaintiff, appellee.*

*Deal, Hutchins & Minor for defendants, appellants.*

BOBBITT, J. The evidence was sufficient, when considered in the light most favorable to plaintiff, to require submission of the case to the jury. Moreover, the evidence, when so considered, did not warrant the

special peremptory instruction requested by defendants, relating to the contributory negligence issue. Hence, the assignments of error directed to the denial of defendants' motion for judgment of nonsuit and to the refusal of the court to give the peremptory instruction requested by defendants are overruled. Since a new trial is awarded for reasons stated below, we refrain from discussing in detail the permissible inferences that may be drawn from the evidence presently before us. *Caudle v. R. R.*, 242 N.C. 466, 88 S.E. 2d 138, and cases cited.

Defendants' assignments of error, based on exceptions No. 39 and No. 43, are well taken.

Work in progress related solely to the ditchdigging, pipe-laying and backfilling operations. No person in this immediate area or within the 900 feet between the "ONE-WAY ROAD" signs undertook to direct traffic.

Admittedly, Lewis attempted to pass Sloan.

A witness for plaintiff testified: "Traffic there was going east and west all the time. Vehicles would meet and pass each other. At times when this work was in progress they would have to stop, but the traffic was moving. There was plenty of room for traffic to meet and pass each other, except immediately up near the machines, where they were working."

When Lewis started to pass, Sloan was proceeding westwardly in his right (north) lane. He was not then engaged in backfilling the ditch.

Lewis testified, in substance, as follows: No traffic was behind him or meeting him. He blew his horn as he approached the backfiller tractor. When he did so, Sloan, who was seated on the backfiller tractor and in plain view, turned his head and looked back at Lewis. When the vehicles were 50-75 feet apart, Sloan pulled over to his right as if he was going to pull out on the right (north) shoulder, the right wheels of the backfiller tractor going 2-2½ feet off the right (north) edge of the pavement. Then he (Lewis), in attempting to pass, began to pull out to his left, blew his horn again and "just eased up on him." At that time, Sloan suddenly cut across to his left in the path of the tractor-tanker. He (Lewis), in an effort to avoid a collision, then cut farther to his left; and the collision occurred at or near the left (south) edge of the pavement. Sloan gave no signal and did not otherwise indicate that he intended to make a left turn.

Statutory limitations on the privilege of overtaking and passing another vehicle proceeding in the same direction are prescribed by G.S. 20-150. No statutory provision prescribes the legal effect to be given the signs placed on or near the highway by Fox. Under the circumstances disclosed by the evidence, the signs warned motorists that they were approaching an area involving special hazards.

The presence of the warning signs, the ditchdigger, the dirt piled along the highway, and the backfiller tractor, were circumstances tend-

ing to put Lewis on notice that he was approaching and had entered a zone of special hazard; and these circumstances were for consideration by the jury in determining whether Lewis, in pulling out to his left in an attempt to pass the backfiller tractor, failed to use due care, *i.e.*, care commensurate with such circumstances. Too, they were for consideration by the jury in determining whether Sloan was contributorily negligent. *Kellogg v. Thomas,* 244 N.C. 722, 94 S.E. 2d 903. But the instructions to the effect that the mere fact that Lewis attempted to pass Sloan constituted negligence as a matter of law were not warranted by the evidence. These instructions, when related to the evidence, were tantamount to a peremptory instruction on the negligence issue. Since such erroneous instructions were obviously prejudicial, defendants are entitled to a new trial.

Questions posed by other assignments of error may not arise when the cause is tried again.

New trial.

JOHNSON, J., not sitting.